IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY, ) ) Plaintiff, ) ) v. ) ) CHICAGO SCAFFOLDING, INC., AAA-1 ) MASONRY & TUCKPOINTING, INC., ) and EMIL PIEKUTOWSKI, ) ) Defendants. ) | Case No. 14 C 4268 Judge Joan H. Lefkow |

## OPINION AND ORDER

Scottsdale Insurance Company ("Scottsdale") filed a two-count complaint against Chicago Scaffolding, Inc. ("Chicago Scaffolding") and AAA-1 Masonry and Tuckpointing, Inc. ("AAA-1"). (Dkt. 1.) Count I seeks a declaratory judgment that Scottsdale has no duty to defend or indemnify Chicago Scaffolding. (*Id.*) Count II seeks a declaratory judgment that Scottsdale has no duty to indemnify AAA-1 as a potential indemnitor of Chicago Scaffolding. (*Id.*)

Before the court are six motions: (1) Scottsdale's motion for judgment against AAA-1 (dkt. 24); (2) Chicago Scaffolding's motion to dismiss count II (dkt. 33); (3) Scottsdale's motion for summary judgment as to count I (dkt. 35); (4) Chicago Scaffolding's cross-motion for summary judgment as to count I (dkt. 58); (5) Scottsdale's motion to strike Chicago Scaffolding's statement of material facts (dkt. 64); and (6) Chicago Scaffolding's motion for leave to file additional discovery in support of its motion for summary judgment (dkt. 79).

For the reasons stated below, the motions are granted in part and denied in part.[1]

---
[1] The court has jurisdiction under 28 U.S.C. § 1332(a). Venue is appropriate in this district under 28 U.S.C. § 1391(b).

1

# BACKGROUND[2]

## I. The Present Suit

Scottsdale issued an insurance policy to AAA-1, a construction company. (Dkt. 1 ("Compl.") ¶ 9.) The policy provided coverage for the 2011 calendar year. (*Id.*) In March 2011, AAA-1 leased a swing stage scaffold from Chicago Scaffolding for one of its construction projects. (*Id.* ¶ 18.) As part of the lease agreement, AAA-1 agreed to add Chicago Scaffolding as an "additional insured" under its policy with Scottsdale. (*Id.* ¶ 20.) AAA-1 also agreed to indemnify Chicago Scaffolding (although the parties dispute to what extent). (*Id.*) Scottsdale now asks the court for a declaratory judgment that it has no duty to defend or indemnify Chicago Scaffolding as an "additional insured," and, separately, that it has no duty to indemnify AAA-1 to the extent AAA-1 is obligated to indemnify Chicago Scaffolding. (*Id.* at 12.)

## II. Scottsdale's Insurance Policy

As noted above, Scottsdale issued a "commercial general liability policy" to AAA-1. (*Id.* ¶ 9.) It provides,

> We [Scottsdale] will pay those sums that the insured [AAA-1] becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

---

[2] In providing background for a motion to dismiss, a court looks to the complaint. *See Apex Digital, Inc.* v. *Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009). For a motion for summary judgment, the court culls facts from the parties' statements of material fact. *See Omnicare, Inc.* v. *UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) (citation omitted). Here, however, the parties' statements contain little more than excerpts of the insurance policy, contract, and state-court complaint attached as exhibits to Scottsdale's request for a declaratory judgment. The court, therefore, finds it unnecessary to cite to the parties' statements of material fact and cites instead to the exhibits attached to Scottsdale's complaint.

(Dkt. 1-1 at 16.) Thus, the policy imposes on Scottsdale both a duty to indemnify and a duty to defend AAA-1 for liability it incurs from suits over bodily injury or property damage. The policy also includes a section on "additional insureds." Addressing AAA-1, the policy defines an "additional insured" as "any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy." (*Id.* at 33.) The section further provides,

> Such person or organization is an additional insured only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> 1. Your acts or omissions; or
> 2. The acts or omissions of those acting on your behalf;
>
> in the performance of your ongoing operations for the additional insured.

(*Id.*) Thus, under the policy, Scottsdale agrees to indemnify and defend AAA-1, as well as additional insureds, for suits over bodily injury or property damage (as well as suits over personal and advertising injury for additional insureds) caused by AAA-1 or its agents.

## III. AAA-1's Contract with Chicago Scaffolding

In March 2011, AAA-1 entered into a contract with Chicago Scaffolding to lease a swing stage scaffold. (Dkt. 1-3.) The contract contains numerous provisions directing AAA-1 to use the scaffold safely. For example, before setting forth the terms and conditions, the contract states, under the heading "Maintenance & Inspection of Leased Equipment," that the "lessee shall at all times and at his own expense keep leased Equipment in good repair and safe working condition." (*Id.* at 4.) In that same vein, the contract's terms and conditions direct AAA-1 to "[e]rect, maintain and use the leased/purchased Equipment in a safe and proper manner." (*Id.* at

3

6.) The terms and conditions also impose more specific requirements, including that AAA-1 inspect the leased equipment prior by Chicago Scaffolding and prior to use, as well as "maintain a continuing inspection of all leased Equipment at all times throughout the rental term." (*Id.* at 4.)

The contract also contains provisions to protect Chicago Scaffolding in the event of an accident. These provisions provide that AAA-1 will indemnify Chicago Scaffolding and hold it "free and harmless" from "any and all liability caused or alleged to be caused directly or indirectly by the leased/purchased Equipment, by any inadequacy thereof, or defect therein, or by any incident in connection therewith." (*Id.* at 5.) The provisions also require AAA-1 to insure the equipment and to secure comprehensive public liability and property damage insurance. (*Id.* at 7.) Finally, the contract directs AAA-1, on Chicago Scaffolding's request, to "provide a certificate of Insurance naming Chicago Scaffolding, Inc. as additional insured for the comprehensive general liability/umbrella policies and showing such policies to be in force." (*Id.* at 9.)

## IV. The Underlying Suit

The parties' dispute is over potential liability in an underlying tort suit filed in Illinois state court. Plaintiff Emil Piekutowski, who worked for one of AAA-1's subcontractors, alleges that he was injured by falling scaffolding while working on AAA-1's construction site. (Dkt. 1-2.) Piekutowski names both AAA-1 and Chicago Scaffolding (among others) as defendants. (*Id.*)

Piekutowski alleges that the defendants had a direct duty and a derivative duty of care under Restatement (Second) of Torts § 414, which provides, "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability

for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." (*Id.* ¶ 7.) Piekutowski advances numerous theories of negligence in his complaint, including that defendants failed to provide proper support for the scaffolding, failed to adequately secure the scaffolding, failed to use the scaffolding in a safe manner, and failed to maintain the scaffolding in a condition that was reasonably safe. (*Id.* ¶ 9.)

## V.     Procedural History

Piekutowski filed the underlying lawsuit in September 2013. (*Id.*) Scottsdale filed its two-count complaint for a declaratory judgment a little less than a year later. (Compl.) Count I seeks a declaratory judgment that Scottsdale has no duty to defend or indemnify Chicago Scaffolding and count II seeks a declaratory judgment that it has no duty to indemnify AAA-1 as a potential indemnitor of Chicago Scaffolding. (*Id.*)

The court found AAA-1 in default in September 2014, as it had not filed an answer or otherwise responded to Scottsdale's complaint. (Dkt. 23.) Scottsdale then filed a motion for judgment against AAA-1, which is pending before the court. (Dkt. 24.) In October 2014, Chicago Scaffolding filed a motion to dismiss count II of Scottsdale's complaint. (Dkt. 33.) In November 2014, Scottsdale filed a motion for summary judgment as to count I. (Dkt. 35.) Chicago Scaffolding filed a cross-motion for summary judgment in response. (Dkt. 58.) Scottsdale then filed a motion to strike Chicago Scaffolding's statement of material facts. (Dkt. 64.) Chicago Scaffolding also brings a motion for leave to file additional discovery in support of its cross motion for summary judgment. (Dkt. 79.)

Because Chicago Scaffolding's motion to dismiss count II contends that Scottsdale's claim for declaratory relief is not yet ripe for adjudication, and because a finding either way

affects the court's analysis of the other pending motions, the court considers Chicago Scaffolding's motion to dismiss first.

## LEGAL STANDARDS

I.  **Motion to Dismiss**

Ripeness is a justiciability doctrine "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hospitality Ass'n* v. *Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (quoting *Reno* v. *Catholic Social Servs., Inc.*, 509 U.S. 43, 57, n.18 (1993)). Ripeness concerns "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." *Id.* at 808. Although Chicago Scaffolding brings its motion to dismiss under both Federal Rule of Civil Procedure 12(b)(1) and Federal Rule of Civil Procedure 12(b)(6), the court will consider it under Rule 12(b)(1)—as Chicago Scaffolding argues that there is no actual case or controversy before the court. *See Flying J Inc.* v. *City of New Haven*, 549 F.3d 538, 544 (7th Cir. 2008) (holding that ripeness, when it implicates the possibility of a court issuing an advisory opinion, "is a question of subject matter jurisdiction under the case-or-controversy requirement" (quoting *Wisconsin Cent., Ltd.* v. *Shannon*, 539 F.3d 751, 759 (7th Cir. 2008)) (internal quotation marks omitted)); *see also Meridian Sec. Ins. Co.* v. *Sadowski*, 441 F.3d 536, 538–39 (7th Cir. 2006) (recognizing that "a plaintiff's asserted injury may depend on so many future events that a judicial opinion would be advice about remote contingencies—and this aspect of ripeness is part of the case-or-controversy requirement" but concluding that the disagreement between the parties before it was "part of a larger controversy" that was "neither conjectural nor speculative" (internal citations omitted)). Under Rule 12(b)(1), as under Rule 12(b)(6), the court takes as true all well-pleaded allegations set forth in Scottsdale's complaint and draws all reasonable

inferences from the allegations in its favor.  *See Apex Digital, Inc.* v. *Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009).

Scottsdale brings count II under the Declaratory Judgment Act, which permits a federal court to "declare the rights and other legal relations of any interested party seeking such declaration" where there is "a case of actual controversy within its jurisdiction."  28 U.S.C. § 2201(a).  "The test for whether an action for declaratory relief presents an actual controversy for resolution turns on whether 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  *Alcan Aluminium Ltd.* v. *Dep't of Revenue of State of Or.*, 724 F.2d 1294, 1298 (7th Cir. 1984) (quoting *Md. Cas. Co.* v. *Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 85 L. Ed. 826 (1941)).

## II. Motion for Summary Judgment

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  To determine whether any genuine fact issue exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record.  Fed. R. Civ. P. 56(c).  In doing so, the court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party.  *Scott* v. *Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007); *Anderson*, 477 U.S. at 255.  "When the material facts are not in dispute, the existence and interpretation of a contract are questions of law that the court may decide on a

motion for summary judgment." *Citadel Group* v. *Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 587 (7th Cir. 2012).

## ANALYSIS

### I. Count II

Count II of Scottsdale's complaint seeks a declaratory judgment that Scottsdale has no duty to indemnify AAA-1 to the extent that AAA-1 has a duty to indemnify Chicago Scaffolding. (Compl. ¶¶ 36–45.) The crux of Scottsdale's argument is that the indemnification provisions in the contract between AAA-1 and Chicago Scaffolding are so broad that they require AAA-1 to indemnify Chicago Scaffolding for its negligence, which is prohibited under Illinois's Construction Contract Indemnification for Negligence Act, 740 Ill. Comp. Stat. 35/1 *et seq.* (Compl. ¶¶ 39–40.) Scottsdale contends that, as a result, the indemnification provisions are unenforceable. (*Id.* ¶ 41.) Scottsdale then reasons that AAA-1 has no duty to indemnify Chicago Scaffolding and, therefore, it has no duty to indemnify AAA-1. (*Id.* ¶¶ 42–44.) Although Chicago Scaffolding disputes this interpretation of the indemnification provisions, it argues that the court does not have to reach this issue, as no damages have been awarded against it or AAA-1 (dkt. 33 at 3); the question, therefore, is not ripe for adjudication.

An insurer's duty to defend is broader than its duty to pay. *Maryland Cas. Co.* v. *Chicago & N. W. Transp. Co.*, 466 N.E.2d 1091, 1095, 126 Ill. App. 3d 150, 81 Ill. Dec. 289 (1983) (citation omitted). Although the duty to defend is determined by the allegations of the complaint, the duty to indemnify cannot be defined "until the adjudication of the very action which it [the insurer] should have defended." *Id.* (alterations in original) (citing *Centennial Insurance Co.* v. *Applied Health Care Systems, Inc.*, 710 F.2d 1288, 1291, n.6 (7th Cir. 1983)). Therefore, an action seeking a declaratory judgment as to an insurer's duty to indemnify its

8

insured, brought prior to a determination of the insured's liability, is not ripe for adjudication.³

*Lear Corp.* v. *Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003) (collecting cases); *Nautilus Ins. Co.* v. *Vuk Builders, Inc.*, 406 F. Supp. 2d 899, 906 (N.D. Ill. 2005) ("Unlike the duty to defend, the Seventh Circuit has held that 'decisions about indemnity should be postponed until the underlying liability has been established.'").

Scottsdale raises two arguments in response, neither of which is persuasive. First, Scottsdale argues that although count II appears to concern Scottsdale's duty to indemnify, in truth it concerns its duty to defend because the indemnification would include attorney's fees—specifically the defense costs Chicago Scaffolding has accrued and will continue to accrue in the underlying lawsuit. (Dkt. 68 at 8–9.) It is worth noting that nowhere in count II does Scottsdale mention its duty to defend AAA-1; count II is unequivocally directed at Scottsdale's duty to indemnify AAA-1. (Compl. ¶¶ 36–45.) This is not surprising, as Scottsdale does not dispute its duty to defend AAA-1. Indeed, it is providing AAA-1 with representation in the underlying suit. (*Id.* ¶ 24.) Count II does not mention Chicago Scaffolding's attorney's fees, either. Even if it did, however, that a duty to indemnify may include payment of attorney's fees does not convert it into a duty to defend. They are distinct duties. *See Lear Corp.*, 353 F.3d at 583. Although Scottsdale appears to recognize this, and even cites to a case where this court explained the difference between the two duties, it persists in arguing that the "declaration here is the equivalent of a duty to defend determination." (Dkt. 68 at 8–9 (citing *Medline Indus., Inc.* v. *Ram Med., Inc.*, 892 F. Supp. 2d 957, 964–65 (N.D. Ill. 2012)).) Given the clear wording of

---

³ Although Chicago Scaffolding cites to state court decisions for this proposition, "[w]hether a dispute has reached the stage at which a declaratory judgment under 28 U.S.C. § 2201 is appropriate is a question of federal practice." *Lear Corp.* v. *Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003) (citing *Mayer* v. *Gary Partners & Co.*, 29 F.3d 330 (7th Cir. 1994)).

9

Scottsdale's complaint and the clear command of the controlling case law, however, the court rejects Scottsdale's argument.

Scottsdale also argues, in the alternative, that this case falls within the narrow exception outlined in *Bankers Trust Co.* v. *Old Republic Ins. Co.*, 959 F.2d 677 (7th Cir. 1992). *Bankers Trust* held that a duty to indemnify may be justiciable where there is a sufficient probability of a judgment against the insured. *Id.* at 680–81. Scottsdale argues that here there is a sufficient probability that the Illinois state court will find that AAA-1 has a duty to indemnify Chicago Scaffolding. (Dkt. 68 at 9.) Bizarrely, this finding would be based on the same indemnification provisions that Scottsdale argues are unenforceable under Illinois law. (Compl. ¶ 41.) Scottsdale explains this inconsistency by noting that AAA-1 has not challenged the indemnification provisions in the underlying suit. (Dkt. 68 at 9.) That the provisions are unchallenged, however, does not establish a sufficient probability of a judgment against AAA-1, and Scottsdale does not give the court any other reasons to think a judgment against AAA-1 is so likely as to trigger this narrow exception. Scottsdale's argument that, like the insurer in *Bankers Trust*, it faces significant liability is unpersuasive. (*See* dkt. 68 at 11 (noting that Chicago Scaffolding has incurred close to $30,000 in attorney's fees)); *see Bankers Trust Co.*, 959 F.2d at 681 (noting that plaintiff sued insured for $30 million in underlying action and that excess insurer could be liable for a significant portion of the judgment).

Thus, the court grants Chicago Scaffolding's motion. Count II, which is not yet ripe for adjudication, is dismissed without prejudice to refiling. This determination applies with equal force to Scottsdale's claim under count I that it has no duty to indemnify Chicago Scaffolding. It also renders Scottsdale's motion for judgment against AAA-1 moot, as the motion asks the court to declare that Scottsdale is not obligated to indemnify AAA-1 for any liability it may have to

Chicago Scaffolding. This leaves the parties' motions for summary judgment as to Scottsdale's duty to defend Chicago Scaffolding, as well as Scottsdale's motion to strike and Chicago Scaffolding's motion for leave to file additional discovery.

## II. Count I

Scottsdale argues that it only owes a duty to defend Chicago Scaffolding for liability resulting from actions AAA-1 affirmatively undertook as part of its ongoing operations for Chicago Scaffolding. (Compl. ¶¶ 25–35.) Scottsdale sees these as two separate requirements: first, that the liability resulted from actions AAA-1 affirmatively undertook and second, that the actions were part of AAA-1's ongoing operations for Chicago Scaffolding. (*See* dkts. 36, 49.) Chicago Scaffolding disputes the first requirement and asserts that it has met the second requirement. (*See* dkt. 59.) The parties' disagreement requires the court to interpret Scottsdale's insurance policy.

In interpreting the terms of an insurance policy, a court should apply "the rules applicable to contract interpretation." *Founders Ins. Co.* v. *Munoz*, 930 N.E.2d 999, 1003, 237 Ill. 2d 424, 341 Ill. Dec. 485 (2010). "Insurance policies are to be liberally construed in favor of coverage, and where an ambiguity exists in the terms of the contract, the ambiguity will be resolved in favor of the insured and against the insurer." *Mount Vernon Fire Ins. Co.* v. *Heaven's Little Hands Day Care*, 795 N.E.2d 1034, 1039, 343 Ill. App. 3d 309, 277 Ill. Dec. 366 (2003) (citing *State Sec. Ins. Co.* v. *Burgos*, 583 N.E.2d 547, 554, 145 Ill. 2d 423, 164 Ill. Dec. 631 (1991)). An insurance policy, however, "is not rendered ambiguous merely because the parties disagree on its meaning." *Cent. Ill. Light Co.* v. *Home Ins. Co.*, 821 N.E.2d 206, 214, 213 Ill. 2d 141, 290 Ill. Dec. 155 (2004) (citing *Johnstowne Ctr. P'ship* v. *Chin*, 458 N.E.2d 480, 482, 99 Ill. 2d 284, 76 Ill. Dec. 80 (1983)). Like any contract, an insurance policy is to be construed as a whole,

11

giving effect to every provision if possible. *See id.* at 213 (citing *Martindell* v. *Lake Shore Nat'l Bank*, 154 N.E.2d 683, 689, 15 Ill. 2d 272 (1958)). The Illinois Supreme Court "has long established that the burden is on the insured to prove that its claim falls within the coverage of an insurance policy. Once the insured has demonstrated coverage, the burden then shifts to the insurer to prove that a limitation or exclusion applies." *Addison Ins. Co.* v. *Fay*, 905 N.E.2d 747, 752, 232 Ill. 2d 446, 328 Ill. Dec. 858 (2009) (citations omitted).

As noted above, Scottsdale's "commercial general liability policy" imposes on Scottsdale both a duty to indemnify AAA-1 and a duty to defend AAA-1 for liability that AAA-1 incurs from suits over bodily injury or property damage. (Dkt. 1-1 at 16.) The policy also defines an "additional insured" as "any person or organization *for whom you [AAA-1] are performing operations* when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy." (*Id.* at 33 (emphasis added).) The section further provides,

> Such person or organization is an additional insured only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> 1. Your acts or omissions; or
> 2. The acts or omissions of those acting on your behalf;
>
> in the performance of your *ongoing operations* for the additional insured.

(*Id.* (emphasis added).) Scottsdale argues that the phrase "performing operations" requires the *active* performance of work. (Dkt. 36 at 7.) In other words, Scottsdale contends, AAA-1 would have had to have been *inspecting*, *maintaining*, or performing some kind of work on the scaffold when it fell on Piekutowski in order to trigger the policy. (*Id.*) The complaint's allegations that AAA-1 *failed* to act are, Scottsdale argues, insufficient. As Scottsdale explains,

12

> [I]f AAA-1, as the lessee, was actively engaged in the repair of the scaffolding, and in the process injured a third party, it would stand to reason that AAA-1 was performing operations for [Chicago Scaffolding]. Yet, that is not the scenario here, as the Underlying Complaint unequivocally alleges that the scaffolding had already been set up albeit improperly, and was not fixed or properly secured thereafter.

(Dkt. 49 at 4.) This strained reading of the policy, however, is unsupportable. The policy explicitly states, twice, that its coverage of additional insureds applies to "acts or omissions." (Dkt. 1-1 at 16.) Reading the phrase "performing operations" or even the phrase "ongoing operations" as rendering the word "omissions" meaningless undermines the parties' intent and the integrity of the contract. As Scottsdale itself notes, when interpreting an insurance policy, as when interpreting any contract, "it is assumed that 'every provision was intended to serve a purpose.'" (Dkt. 36 at 5 (quoting *Cent. Illinois Light Co.* v. *Home Ins. Co.*, 821 N.E.2d 206, 213, 213 Ill. 2d 141, 290 Ill. Dec. 155 (2004)). Thus, the court assumes that the provisions limiting an additional insured's coverage to liability caused by AAA-1's "acts or omissions" or the "acts or omissions" of those acting on AAA-1's behalf were intended to serve a purpose. Scottsdale's argument runs afoul of this basic tenet of contract interpretation. Thus, the court rejects Scottsdale's contention that Chicago Scaffolding must show AAA-1 was actively performing work for Chicago Scaffolding in order to trigger coverage.

Scottsdale also argues that Piekutowski's injury must have been caused by work AAA-1 was doing for Chicago Scaffolding in order for Chicago Scaffolding to be covered as an "additional insured." (Dkt. 36 at 6.) Scottsdale notes that although the complaint in the underlying action alleges that AAA-1 was negligent in its erection and operation of the scaffold, it does not specifically state that the erection and operation was *for* Chicago Scaffolding. (*Id.*)

13

Therefore, Scottsdale reasons, Chicago Scaffolding is not covered under the policy. (*Id.* at 6–7.) A complaint in an underlying action, however, need not explicitly make this connection.

An insurer's "duty to defend does not require that the complaint allege or use language affirmatively bringing the claims within the scope of the policy," as "[t]he question of coverage should not hinge on the draftsmanship skills or whims of the plaintiff in the underlying action." *Illinois Emcasco Ins. Co.* v. *Nw. Nat. Cas. Co.*, 785 N.E.2d 905, 909, 337 Ill. App. 3d 356, 271 Ill. Dec. 711 (2003) (quoting *Int'l Ins. Co.* v. *Rollprint Packaging Products, Inc.*, 728 N.E.2d 680, 688, 312 Ill. App. 3d 998, 245 Ill. Dec. 598 (2000)) (internal quotation marks omitted). Instead, "the insurer has the duty to defend unless the allegations of the underlying complaint demonstrate that the plaintiff in the underlying suit will not be able to prove the insured liable, under any theory supported by the complaint, without also proving facts that show the loss falls outside the coverage of the insurance policy." *Illinois Emcasco Insurance Co.* v. *Northwestern National Casualty Co.*, 785 N.E.2d 905, 909, 337 Ill. App. 3d 356, 271 Ill. Dec. 711 (2003) (citations omitted).

The court agrees with Scottsdale that for Chicago Scaffolding to qualify as an additional insured under Scottsdale's insurance policy, Chicago Scaffolding must be seeking coverage for liability that is alleged to have been caused by AAA-1's ongoing operations for Chicago Scaffolding.[4] The contract's language is unambiguous. It defines an "additional insured" as "any person or organization" for whom AAA-1 is "performing operations." (Dkt.1-1 at 33.) It also limits coverage to injuries or damage caused by AAA-1's act or omissions or the acts or omissions of persons acting on AAA-1's behalf in the performance of AAA-1's "*ongoing*

---

[4] At different points in its briefs, Scottsdale argues not only that Chicago Scaffolding must show AAA-1 was "performing operations" for Chicago Scaffolding but that it was acting for "the *benefit*" of Chicago Scaffolding. (*See, e.g.*, dkt. 49 at 2.) The court rejects this characterization as unsupported by the plain language of the policy.

*operations* for the additional insured." (*Id.* (emphasis added).) But even under the weight of these limitations, it is not "clear from the face of the complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." *Int'l Ins. Co.* v. *Rollprint Packaging Products, Inc.*, 728 N.E.2d 680, 688, 312 Ill. App. 3d 998, 245 Ill. Dec. 598 (2000). Indeed, the opposite is true.

The contract between AAA-1 and Chicago Scaffolding directs AAA-1, no less than three times, to maintain the scaffold is safe condition. (*See* dkt. 1-3 at 4 (stating that "the lessee shall at all times and at his own expense keep leased Equipment in good repair and safe working condition" and directing AAA-1 to "maintain a continuing inspection of all leased Equipment at all times throughout the rental term"), 6 (requiring AAA-1 to "[e]rect, maintain and use the leased/purchased Equipment in a safe and proper manner").) AAA-1's operations for Chicago Scaffolding, therefore, included the continued maintenance of the scaffold. One of Piekutowski's allegations is that AAA-1 and other defendants "failed to maintain the scaffolding in a condition that was reasonably safe." (Dkt. 1-2 ¶ 9.) And as Chicago Scaffolding observes, the complaint premises defendants' liability, in part, on § 414 of the Restatement (Second) of Torts, which provides that an employer who "entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." Piekutowski is asking the state court, at least potentially, to hold Chicago Scaffolding liable for its failure to exercise its control over AAA-1 with reasonable care. Thus, the liability for which Chicago Scaffolding is seeking coverage is liability that is alleged to have been incurred by AAA-1's ongoing operations for Chicago Scaffolding. The complaint, therefore, states facts that bring the case within, or

15

potentially within, the policy's coverage—which is more than is required under Illinois law.[5] *See, e.g.*, *Int'l Ins. Co.*, 728 N.E.2d at 688 ("An insurer's refusal to defend an action against the insured is not justified unless it is clear from the face of the complaint that the allegations *fail* to state facts which bring the case within, or potentially within, the policy's coverage." (emphasis added)).

This leaves Scottsdale's motion to strike, which the court denies as moot because it did not find the disputed statements of fact necessary to its disposition of the parties' motions for summary judgment. The court also denies Chicago Scaffolding's motion for leave to file additional discovery as moot. Finally, Chicago Scaffolding asks the court to enter an order requiring Scottsdale to provide it with independent counsel and to reimburse it for costs incurred so far. (Dkt. 70 at 9–11.) The court agrees that there may be a conflict of interest between Chicago Scaffolding and AAA-1 but finds that an order is premature, and directs the parties to work toward an agreement. As for costs incurred so far, the court grants Chicago Scaffolding's request. Scottsdale is directed to reimburse Chicago Scaffolding for its costs so far. *See Landmark Am. Ins. Co.* v. *O'Malley*, No. 13 C 02552, 2014 WL 2978213, at *6 (N.D. Ill. July 2, 2014) ("Because Landmark has a duty to defend Hilger, it will now also have to reimburse Hilger for any defense expenses Hilger has incurred so far" (citing *Supreme Laundry Serv., L.L.C.* v. *Hartford Cas. Ins. Co.*, 521 F.3d 743, 749–50 (7th Cir. 2008))); *see also A. Kush & Assocs.* v. *Am. States Ins. Co.*, 927 F.2d 929, 934 (7th Cir. 1991) ("[W]hen an insurer has a duty to defend it must reimburse [the insured] for the reasonable fees and costs incurred in that action to date." (internal quotation marks and citation omitted)).

---

[5] Although Chicago Scaffolding asks the court to consider its counterclaim against AAA-1 in the underlying action as well (dkt. 59 at 4–5), the court finds the counterclaim unnecessary to its disposition and thus does not address the parties' arguments as to whether consideration of the counterclaim is proper.

## CONCLUSION

For the reasons stated above, Scottsdale's motion for judgment against AAA-1 (dkt. 24) is denied as moot. Chicago Scaffolding's motion to dismiss count II (dkt. 33) is granted and count II is dismissed without prejudice. Scottsdale's motion for summary judgment on count I (dkt. 35) is denied and Chicago Scaffolding's cross motion for summary judgment on count I (dkt. 58) is granted. Judgment as to count I is entered in Chicago Scaffolding's favor. Scottsdale's motion to strike (dkt. 64) is denied as moot. Chicago Scaffolding's motion for leave to file additional discovery in support of its cross motion for summary judgment (dkt. 79) is also denied as moot.

Date: August 11, 2015

_____
U.S. District Judge Joan H. Lefkow